UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-226-FDW
(3:07-cr-173-FDW-4)

| | |
|---|---|
| CARLA GRIFFIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) **ORDER** |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), on Petitioner's Motion for Leave to File, (Doc. No. 5), Petitioner's Motion to Amend/Correct, (Doc. No. 7), and on the Government's Response to Petitioner's Motion to Vacate, (Doc. No. 14). Petitioner is represented by Sandra Jean Barrett.

**I.    BACKGROUND**

Petitioner and her coconspirators engaged in a mortgage fraud scheme in which promoters recruited buyers with good credit to invest in real estate purchases with no money down. (Crim. Case No. 3:07-cr-173, Doc. No. 125 at 5: PSR). In exchange for their good credit, promoters told the investors that they would receive a payment following closing and that the promoters would recruit renters to live in the properties under a lease-to-purchase contract. (Id.). The promoters also told investors that, after approximately one year, the renters would purchase

1

the properties, resulting in additional profit to the investors. (Id.). After securing investors, the promoters prepared fraudulent loan applications, making numerous misrepresentations about the nature of the transaction and the qualifications of the investors. (Id. at 6). Throughout the scheme, the promoters purchased overvalued properties from builders or purchased properties at fair market value and then valued them higher with the cooperation of an appraiser. (Id.). Once the properties were sold to the "investors," the coconspirators divided the difference between the inflated loan value and the actual price of the property. (Id.).

Petitioner, who was employed by Countrywide Home Loans as an underwriter, was responsible for ensuring that many of the loans for the overvalued properties received approval from the bank. (Id.). Despite knowing that the loan applications contained false statements, Petitioner facilitated the closing of several of the fraudulent loans through her position as an underwriter. (Id. at 6-7). In exchange, Petitioner received kickbacks from the promoters. (Id. at 7). Specifically, in a five-month period, Petitioner was paid approximately $78,000 in kickbacks. (Id.).

The Grand Jury for the Western District of North Carolina charged Petitioner, along with two codefendants, with conspiracy to commit mortgage fraud, in violation of 18 U.S.C. § 371; mail fraud and aiding and abetting the same, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); money laundering and aiding and abetting the same, in violation of 18 U.S.C. § 1957(a) and 18 U.S.C. § 2; and conspiracy to commit honest services mail fraud, in violation of 18 U.S.C. § 1349. (Id., Doc. No. 55: Superseding Bill of Indictment). On May 22, 2008, Petitioner pleaded guilty to the mortgage fraud conspiracy, pursuant to a written plea agreement. (Id., Doc. No. 72 at 1: Plea Agreement). In exchange, the Government agreed to dismiss the remaining charges. (Id.). In

light of the Government's concessions, Petitioner agreed to waive the right to appeal or collaterally attack her conviction and sentence, with the exception of claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at 19). Petitioner also signed and agreed to a factual resume, agreeing "without reservation that [the factual resume and superseding indictment] accurately describe[d] the events and circumstances surrounding [her] offense." (Id., Doc. No. 73: Factual Resume).

Consistent with the terms of her agreement, Petitioner pled guilty before this Court in a hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure. (Id., Doc. No. 187: Plea Hrg. Tr.). At the outset of the hearing, the Assistant United States Attorney ("AUSA") explained that he had met with Petitioner and her attorney for two hours earlier that week to discuss "at length" the Government's case, including its evidence related to all counts alleged in the superseding indictment. (Id. at 7-8). According to the AUSA, the attorneys met again the day before the hearing to discuss the factual resume and to incorporate several changes Petitioner requested through defense counsel. (Id.). After Petitioner raised a question related to her understanding of the process, the Court took a recess to permit the parties time to discuss a remaining issue related to the factual resume. (Id. at 9).

Following the discussion, the parties agreed to an additional revision, which Petitioner and all attorneys initialed. (Id. at 10-11). The AUSA explained, on the record, that during the recess he reaffirmed that Petitioner understood that she had to voluntarily and fully admit to the elements of the offense in order to proceed with her guilty plea and that Petitioner affirmed that she understood and that she was prepared to go forward in light of the revision. (Id. at 11-12). This Court then confirmed with both defense counsel and Petitioner that the AUSA's summary of the discussion during the recess was accurate. (Id. at 12).

3

After confirming that Petitioner wished to proceed, this Court explained the nature of the offense, the elements, and the statutory penalties. (Id. at 15-16; 23-24). Under oath, Petitioner affirmed that she understood the purpose of the hearing, that she understood the plea agreement in its entirety, and that she was in no way persuaded or threated to accept the plea agreement. (Id. at 13). Petitioner also affirmed her understanding that she was waiving her right to appeal or collaterally attack her conviction and sentence, except for claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at 20).

In addition, Petitioner acknowledged that she had read the factual resume and that she assented to all of the facts set forth therein. (Id. at 25-26). After Petitioner admitted that she was, in fact, guilty, this Court found, based on her responses, that Petitioner was fully competent and capable of entering an informed plea; that she knew the nature of the charges and consequences of the plea; and that she entered the plea knowingly and voluntarily. (Id. at 27-28). In light of its findings, this Court accepted Petitioner's plea at the conclusion of the hearing. (Id. at 28).

At Petitioner's sentencing hearing, this Court heard extensive argument and received evidence related to an objection by Petitioner to the guidelines loss amount. (Id., Doc. No. 188: Sent. Hrg. Tr.). This Court ultimately concluded that Petitioner was responsible for a loss in excess of $2.5 million based on what was reasonably foreseeable to her during the conspiracy. (Id. at 87-88). After addressing Petitioner's other objections, this Court calculated an advisory guidelines range of fifty-seven to sixty months, based on an offense level of twenty-five and a criminal history category of I.[1] See (Id. at 95; 146-47). Defense counsel argued for a downward

---

[1] The Court initially noted a maximum guideline range of seventy-one months, but clarified later in the sentencing hearing that the statutory maximum was sixty months.

4

variance, while the Government recommended a within-guidelines sentence of sixty months in prison. (Id. at 143-45).

During her allocution, Petitioner made certain statements minimizing her role and culpability, causing this Court to question whether Petitioner knowingly and voluntarily entered into the plea agreement. See (Id. at 102-11). In light of its concerns, this Court explored the issue with Petitioner, defense counsel, and the AUSA. In summarizing his pre-plea advice, defense counsel stated that he had advised Petitioner that he thought she had little chance of prevailing at trial in light of the strength of the evidence, but that if she elected to plead guilty, she had to do so "honestly and factually." (Id. at 124; 127-28). Defense counsel also verified that he had reviewed the plea agreement and factual resume with Petitioner and that she had ample time to review them independently. (Id. at 127-28).

Although Petitioner never made a formal motion, this Court interpreted her statements as a motion to withdraw the guilty plea. (Id. at 137-38). Applying the factors set forth in the Fourth Circuit's decision in United States v. Moore, 931 F.2d 245 (4th Cir. 1991), this Court found, based on its observations during the Rule 11 colloquy, that Petitioner "knowingly and voluntarily entered her plea"; that she had not credibly asserted her legal innocence, especially in light of the kickback payments; that the motion to withdraw was untimely; that defense counsel provided "very competent counsel and explained to [Petitioner] her obligations in . . . voluntarily and knowingly entering a plea of guilty"; and that there was prejudice to the Government, which had prepared to try Petitioner together with one of her coconspirators a year and a half earlier; but that withdrawal would not inconvenience the Court. (Id. at 138-41). Because all but one of the factors weighed against withdrawal, this Court denied the "de facto motion to withdraw the plea" and sentenced Petitioner to sixty months in prison. (Id. at 141-52). The Court also ordered

Petitioner to pay restitution of almost $2.8 million.  The Court entered judgment on November 30, 2009.  (Id., Doc. No. 153: Judgment).

Petitioner appealed, alleging (1) procedural error at sentencing in this Court's loss calculation, (2) prosecutorial misconduct by the Government for "pursu[ing] a penalty it knows is illegal or unreasonable," and (3) procedural error for creating an error that did not "allow for meaningful appellate review."  (Br. of Appellant, No. 09-5163, Doc. No. 27 (4th Cir. July 12, 2010)).  In response, the Government moved to dismiss, seeking to enforce the valid appeal waiver contained in Petitioner's plea agreement.  (Motion, No. 09-5163, Doc. No. 33 (4th Cir. Aug. 25, 2010)).  In an unpublished opinion dated February 11, 2011, the Fourth Circuit dismissed in part and affirmed in part, dismissing Petitioner's claims of procedural error and rejecting the prosecutorial misconduct claim, finding that "the prosecutor's conduct was neither improper nor prejudicially affected [Petitioner's] substantial rights."  United States v. Griffin, 410 Fed. App'x 724, 725 (4th Cir. Feb. 11, 2011).  The Fourth Circuit issued its mandate on April 21, 2011, and Petitioner did not seek a writ of certiorari from the U.S. Supreme Court.  (Crim. Case No. 3:07-cr-173, Doc. No. 199: Mandate).

On April 13, 2012, Petitioner filed the instant motion, which she amended on December 19, 2013.  In support of her motion to vacate, Petitioner claims (1) that she received ineffective assistance from counsel prior to pleading guilty and at sentencing, (2) that the Government committed prosecutorial misconduct, and (3) that this Court erred in its loss calculation at sentencing.  (Doc. No. 9).

II.     **STANDARD OF REVIEW**

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior

proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and the Government's Response, the Court finds that the argument presented by the Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

A. Petitioner's Claim of Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

In support of her ineffective assistance of counsel claim, Petitioner contends that defense

7

counsel (1) failed to research, investigate, and prepare a sufficient defense for trial; (2) misrepresented her trial options, gave her incompetent advice pertaining to the plea agreement, coerced her to plead guilty, and failed to clarify ambiguous provisions of the plea agreement; and (3) failed to provide adequate representation in connection with the guidelines loss calculation. Petitioner's ineffective assistance of counsel claim is without merit.

First, contrary to Petitioner's unsupported allegations, the record confirms that defense counsel made an independent assessment of the evidence and advised Petitioner to accept the Government's plea offer in light of that assessment. Moreover, defense counsel met with the Government on multiple occasions, including at least once with Petitioner, to thoroughly review the Government's evidence prior to Petitioner's plea. On this record, Petitioner is unable to establish deficient performance in counsel's investigation.

Second, Petitioner's argument that she received ineffective assistance from defense counsel prior to pleading guilty is wholly meritless. As the record confirms, this Court was careful, as was the Government, to ensure that Petitioner understood her rights and the plea process throughout the proceedings. In fact, the Government took multiple recesses during the Rule 11 hearing to allow counsel to explain the process and to discuss her rights. After the recess and in light of this Court's clarifications, Petitioner swore that she was in fact guilty, that she understood the plea agreement after reviewing it with counsel, and that she intended to plead guilty pursuant to that agreement. "In the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). Here, during the sentencing hearing, this Court found that Petitioner's representations during the Rule

11 hearing were valid, after defense counsel summarized his pre-plea advice. Petitioner is unable to rebut this Court's earlier findings with the self-serving accusations she makes in her motion to vacate. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal."). Moreover, even if Petitioner were able to establish deficient performance, she fails altogether to allege prejudice. To establish prejudice in this context, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Petitioner did not challenge this Court's denial of her motion to withdraw her guilty plea on appeal, nor does she ask this Court to allow her to withdraw her plea in her motion to vacate. Accordingly, Petitioner's claim fails, even without considering the performance prong, because she has not adequately alleged prejudice.

Third, Petitioner's allegations of ineffective assistance at sentencing are contradicted by the record. Defense counsel objected to the loss calculation and argued extensively against the Government's proposed approach. This Court heard argument from the parties and received witness testimony in a lengthy sentencing hearing. In fact, the Government's witness twice testified in relation to the loss amount issue and this Court recessed the hearing with instructions for the Government to do additional research in support of its position. Throughout this process, defense counsel argued effectively in support of Petitioner's position, discussing the guidelines and relevant legal authority and cross-examining the Government's witness. On this record, Petitioner is unable to carry her burden of demonstrating deficient performance.

B. Petitioner's Claim of Prosecutorial Misconduct

The law of the case doctrine "forecloses relitigation of issues expressly or impliedly

decided by the appellate court." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). Courts have long held that a petitioner "will not be allowed to recast, under the guise of collateral attack, questions fully considered" on direct appeal. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976); see also United States v. Natelli, 553 F.2d 5, 7 (2d Cir. 1977) (holding that issues previously decided on direct appeal cannot be recast in the form of a § 2255 motion). In her direct appeal, Petitioner alleged prosecutorial misconduct by the Government. The Fourth Circuit considered the claim and concluded that the prosecutor's conduct was not improper and that it did not unfairly prejudice Petitioner. Accordingly, Petitioner's claim is barred on collateral review, and the Government is entitled to judgment as a matter of law.

C. Petitioner's Claim of Procedural Error at Sentencing

It is well settled that a defendant may waive his right to collaterally attack his conviction and sentence through a plea agreement, as long as the waiver is knowing and voluntary. United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). In assessing the voluntariness of such a waiver, "a defendant's solemn declarations in open court affirming [a plea] agreement . . . carry a strong presumption of verity." United States v. White, 366 F.3d 291, 295 (4th Cir. 2004) (quoting Blackledge, 431 U.S. at 74). "Indeed, because they do carry such a presumption," a defendant's representations during the Rule 11 hearing "present 'a formidable barrier in any subsequent collateral proceedings.'" Id. at 295-96 (quoting Blackledge, 431 U.S. at 74).

Petitioner's sworn representations during her plea colloquy conclusively establish that she knowingly and voluntarily waived the right to collaterally attack her sentence through her plea agreement. This Court repeatedly advised Petitioner about the impact of the waiver during the Rule 11 hearing, and, in response, Petitioner affirmed that she understood. Petitioner is unable to point to anything in the record that casts doubt on her sworn statements related to her

waiver. On this record, it is clear that Petitioner knowingly and voluntarily waived the right to collaterally attack her sentence and that the waiver is therefore valid. Moreover, on appeal, the Fourth Circuit reviewed and dismissed Petitioner's sentencing claim. The Fourth Circuit engaged in a de novo review to determine the validity of Petitioner's waiver and, after reviewing the entire record, concluded that Petitioner's waiver was knowing and voluntary.

Petitioner waived in her plea agreement the right to collaterally attack her sentence with the exception of claims of ineffective assistance of counsel or prosecutorial misconduct. Petitioner's claim of procedural error at sentencing does not qualify under either exception. Accordingly, Petitioner's claim of procedural error at sentencing is barred.

## IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Petitioner's Motion for Leave to File and Motion to Amend/Correct, (Doc. Nos. 5; 7), are both **GRANTED** as the Court has considered Petitioner's Amended Motion to Vacate.

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: March 18, 2014

Frank D. Whitney
Chief United States District Judge